UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 21-80109-CR-ROSENBERG/

18 U.S.C. § 1349
18 U.S.C. § 371
18 U.S.C. § 982

UNITED STATES OF AMERICA

vs.

ALVIN ATKIN MADISON,
a/k/a "Will,"

Defendant.
_____/

FILED BY _____ D.C.

JUL 30 2021

ANGELA E. NOBLE
CLERK U.S. DIST. CT.
S.D. OF FLA. – W.P.B.

## INFORMATION

The Acting United States Attorney charges:

## GENERAL ALLEGATIONS

At all times material to this Information:

### The Medicare Program

1.     The Medicare Program ("Medicare") was a federal health care program that provided free or below-cost health care benefits to individuals who were sixty-five years of age or older or disabled.  The benefits available under Medicare were governed by federal statutes and regulations.  The United States Department of Health and Human Services ("HHS"), through its agency, the Center for Medicare and Medicaid Services ("CMS"), oversaw and administered Medicare.  Individuals who received benefits under Medicare were commonly referred to as Medicare "beneficiaries."

2.     Medicare was a "health care benefit program" as defined by Title 18, United States Code, Section 24(b).

3.     Medicare was subdivided into multiple program "parts." Medicare Part A covered health care services provided by hospitals, skilled nursing facilities, hospices, and home health agencies. Medicare Part B covered physician services and outpatient care, including an individual's access to durable medical equipment, prosthetics, orthotics, and supplies ("DMEPOS").

### Durable Medical Equipment Suppliers

4.     Orthotic devices were a type of DMEPOS that included rigid and semi-rigid devices, such as knee braces, back braces, shoulder braces, and wrist braces (collectively, "braces").

5.     DMEPOS companies, physicians, and other health care providers that provided services to Medicare beneficiaries were referred to as Medicare "providers." To participate in Medicare, providers were required to submit an application in which the providers agreed to comply with all Medicare-related laws and regulations.

6.     Individuals and entities that wished to become Medicare-authorized DMEPOS Suppliers needed to file with CMS a "Medicare Enrollment Application" form named a "CMS-855S." Page 1 of the CMS-855S form listed the "DMEPOS SUPPLIER STANDARDS. TO ENROLL IN THE MEDICARE PROGRAM AND BE ELIGIBLE TO SUBMIT CLAIMS AND RECEIVE PAYMENTS, EVERY DMEPOS SUPPLIER APPLICANT MUST MEET AND MAINTAIN THESE ENROLLMENT STANDARDS." Among the listed standards were the requirements for suppliers to "be in compliance with all applicable federal and state licensure and regulatory requirements"; to "provide complete and accurate information on the DMEPOS application"; and to "disclose any person having ownership, financial or control interest in the supplier."

2

7.      For each person having an ownership, financial, or control interest, the application required disclosure of felony convictions and certain misdemeanor convictions, because CMS examined the facts and circumstances of those convictions to determine whether the applicants were legally prohibited from obtaining a Medicare provider number.

8.      The Application further advised applicants that violations of 18 U.S.C. §§ 1035 and 1347 are criminal offenses and described the potential penalties.

9.      By signing the Application, the Applicant certified, under penalty of perjury:

        a.      that he/she had read the Application and all the information was true, accurate, and complete;

        b.      that he/she would abide by Medicare's laws and regulations and program instructions and only submit claims that complied with those laws and regulations, including the Anti-Kickback Statute;

        c.      that neither the supplier nor any five percent or greater owner, partner, officer, director, managing employee, delegated official, or authorized official is prohibited from supplying Medicare services; and

        d.      that he/she would not knowingly present or cause to be presented a false or fraudulent claim for payment and would not submit claims with deliberate ignorance or reckless disregard of their truth or falsity.

10.     If CMS approved a supplier's application, CMS assigned a Medicare "provider number." A health care provider with a Medicare provider number could file claims with Medicare to obtain reimbursement for items and services rendered to beneficiaries.

11.     Enrolled Medicare providers agreed to abide by the policies, procedures, rules, and regulations governing reimbursement.  To receive Medicare funds, enrolled providers were

3

required to abide by the Anti-Kickback Statute and other laws and regulations.  Providers were given access to Medicare manuals and service bulletins describing billing procedures, rules, and regulations.

12.     Medicare reimbursed DMEPOS companies and other health care providers for services and items rendered to beneficiaries.  To receive payment from Medicare, providers submitted or caused the submission of claims to Medicare, either directly or through a billing company.

13.     A Medicare claim for DMEPOS reimbursement was required to set forth, among other things, the beneficiary's name and unique Medicare identification number, the equipment provided to the beneficiary, the date the equipment was provided, the cost of the equipment, and the name and unique physician identification number of the physician who prescribed or ordered the equipment.

14.     A claim for DMEPOS submitted to Medicare qualified for reimbursement only if the DMEPOS was medically necessary for the treatment of the beneficiary's illness or injury, prescribed by a licensed physician, and accompanied by a completed prescription for braces and other Medicare-required documents (collectively referred to as "doctors' orders").

### The Defendant, Co-Conspirators, and Related Entities

15.     Durable Supplies and Equipment LLC ("Durable") was a Florida company with its principal place of business in Palm Beach County, Florida.

16.     Family Medical Equipment, LLC ("Family Medical") was a Florida company with its principal place of business in Palm Beach County, Florida.

17.     Infinity Medical Equipment Group LLC ("Infinity") was a Florida company with its principal place of business in Palm Beach County, Florida.

4

18.     Iridium Medical Supply LLC ("Iridium") was a Florida company with its principal place of business in Palm Beach County, Florida.

19.     RX Licensing and Accreditations, LLC ("RX Licensing") was a Florida company with its principal place of business in Palm Beach County, Florida.

20.     Trinity Medical Solutions, LLC ("Trinity") was a Florida company with its principal place of business in Palm Beach County, Florida.

21.     The Defendant, **ALVIN ATKIN MADISON, a/k/a "Will,"** was a resident of Palm Beach County and had ownership, financial, and control interest in Durable, Family Medical, Infinity, Iridium, and Trinity.

22.     Co-Conspirator Christine Pawlak was a resident of Palm Beach County; was the owner of RX Licensing; had ownership, financial, and control interest in Trinity; and served as a consultant for Durable, Family Medical, Infinity, and Iridium.

23.     Co-Conspirator #1 was a resident of Palm Beach County.

24.     Individual #1 was a resident of Palm Beach County.

25.     Individual #2 was a resident of Broward County.

## COUNT 1
### CONSPIRACY TO COMMIT HEALTH CARE FRAUD
### (18 U.S.C. § 1349)

From in or around September 2018 and continuing through in or around October 2020, in Palm Beach County, in the Southern District of Florida, and elsewhere, the defendant,

**ALVIN ATKIN MADISON,**
**a/k/a "Will,"**

did knowingly and willfully combine, conspire, confederate, and agree with Christine Pawlak and others known and unknown to the Acting United States Attorney, to execute a scheme and artifice

to defraud a health care benefit program affecting commerce, as defined in Title 18, United States Code, Section 24(b), that is, Medicare, and to obtain, by means of materially false and fraudulent pretenses, representations, and promises, money and property owned by, and under the custody and control of, said health care benefit programs, in connection with the delivery of and payment for health care benefits, items, and services, in violation of Title 18, United States Code, Section 1347.

### Purpose of the Conspiracy

26.     It was a purpose of the conspiracy for the defendant and his co-conspirators to unlawfully enrich themselves by, among other things: (a) establishing DMEPOS companies and enrolling DMEPOS companies in the Medicare program in the names of straw owners to conceal the identities of the true owners of the DMEPOS companies; (b) paying kickbacks and bribes in exchange for signed doctors' orders for braces prescribed to Medicare beneficiaries that were medically unnecessary, not eligible for reimbursement, and not provided as represented; (c) submitting and causing the submission of false and fraudulent claims to Medicare; (d) concealing and causing the concealment of false and fraudulent claims to Medicare; and (e) diverting fraud proceeds for their personal use and benefit, the use and benefit of others, and to further the fraud.

### Manner and Means of the Conspiracy

The manner and means by which the defendant and his co-conspirators sought to accomplish the object and purpose of the conspiracy included, among other things, the following:

27.     Christine Pawlak, through her consulting company RX Licensing, established DMEPOS companies; enrolled DMEPOS companies in the Medicare program as DMEPOS providers; and provided purported consulting services to DMEPOS providers Durable, Family

6

Medical, Infinity, Iridium, and Trinity.

28.     The Defendant, **ALVIN ATKIN MADISON, a/k/a "Will,"** Christine Pawlak, and co-conspirators, including Co-Conspirator #1, negotiated the purchase of doctors' orders in exchange for kickbacks on behalf of DMEPOS companies including Iridium and Trinity.

29.     The Defendant, **ALVIN ATKIN MADISON, a/k/a "Will,"** had an ownership, financial, and control interest in his own DMEPOS companies, including Iridium and Trinity, and caused the submission of false and fraudulent claims to Medicare for DMEPOS that were procured through kickbacks, medically unnecessary, and otherwise ineligible for Medicare reimbursement.

30.     Co-Conspirator #1 had an ownership, financial, and control interest in his own DMEPOS company, Iridium, and caused the submission of false and fraudulent claims to Medicare for DMEPOS that were procured through kickbacks, medically unnecessary, and otherwise ineligible for Medicare reimbursement.

31.     The Defendant, **ALVIN ATKIN MADISON, a/k/a "Will,"** intentionally concealed his ownership, financial, and control interest in Durable, Family Medical, Infinity, Iridium, and Trinity in Medicare enrollment applications that he caused to be submitted to enroll each company in the Medicare program as DMEPOS providers because **MADISON** understood that he was ineligible to enroll as a Medicare Provider as a convicted felon.

32.     Christine Pawlak intentionally concealed her ownership, financial, and control interest in Trinity in Medicare enrollment applications that she caused to be submitted to enroll each company in the Medicare program as a DMEPOS provider because Pawlak understood that she was ineligible to enroll as a Medicare Provider as a convicted felon.

33.     The Defendant, **ALVIN ATKIN MADISON, a/k/a "Will,"** and Christine Pawlak submitted certifications to Medicare certifying that the enrollment applications for Durable,

7

Family Medical, Infinity, Iridium, and Trinity were truthful and complete and that those entities would abide by the Medicare laws, including the Federal Anti-Kickback Statute, and would not knowingly present or cause to be presented a false or fraudulent claim for payment by Medicare, and would not submit any claims with deliberate ignorance or reckless disregard of their truth or falsity.

34.     The Defendant, **ALVIN ATKIN MADISON, a/k/a "Will,"** and Christine Pawlak and their co-conspirators, through Iridium and Trinity, submitted false and fraudulent claims to Medicare in the approximate amount of $1,741,861, and received Medicare reimbursement in the approximate amount of $737,569, for braces that were: (a) procured through the payment of kickbacks and bribes; (b) medically unnecessary and ineligible for Medicare reimbursement; and (c) not provided as represented.

35.     The Defendant, **ALVIN ATKIN MADISON, a/k/a "Will,"** and Christine Pawlak and their co-conspirators diverted fraud proceeds from the scheme for their personal use and benefit, the use and benefit of others, and to further the fraud.

36.     The Defendant, **ALVIN ATKIN MADISON, a/k/a "Will,"** and Christine Pawlak, after obtaining Medicare Provider Numbers for Durable, Family Medical, and Infinity through the use of a straw owner and hiding their own ownership and financial interest, sold the businesses at a substantial premium.

All in violation of Title 18, United States Code, Section 1349.

## COUNT 2
## CONSPIRACY TO MAKE A FALSE STATEMENT RELATING TO HEALTH CARE MATTERS
### (18 U.S.C. § 371)

1.     The General Allegations section and Paragraph 31 of the Manner and Means

section of Count 1 of this Information are re-alleged and incorporated by reference as though fully set forth herein.

2.      Beginning in or around September 2018, and continuing through in or around October 2020, in Palm Beach County, in the Southern District of Florida, and elsewhere, the defendant,

**ALVIN ATKIN MADISON,**
**a/k/a "Will,"**

did willfully, that is, with the intent to further the objects of the conspiracy, and knowingly combine, conspire, confederate and agree with others known and unknown to the Acting United States Attorney:

a.      to defraud the United States by impairing, impeding, obstructing, and defeating through deceitful and dishonest means, the lawful government functions of the United States Department of Health and Human Services in its administration and oversight of the Medicare program; and

b.      to commit certain offenses against the United States, that is:

i.      to violate Title 18, United States Code, Section 1035(a)(1), by knowingly and willfully falsifying, concealing, or covering up by any trick, scheme, or artifice, a material fact, in connection with the delivery of and payment for health care benefit items, and services, and

ii.     to violate Title 18, United States Code, Section 1035(a)(2), by knowingly and willfully making any materially false, fictitious, and fraudulent statements and representations, and making and using any materially false writing and document knowing the same to contain any materially false, fictitious, and fraudulent

statement and entry, in connection with the delivery of and payment for health care benefits, items, and services.

All in violation of Title 18, United States Code, Section 371.

### Purpose of the Conspiracy

3.      It was the purpose of the conspiracy for **ALVIN ATKIN MADISON, a/k/a "Will,"** and his co-conspirators to unlawfully enrich themselves by concealing the true ownership interest of certain DMEPOS companies applying for enrollment in the Medicare program, often because the true owner had a criminal record that made him or her ineligible to operate as a Medicare provider.

### Manner and Means

The manner and means by which **ALVIN ATKIN MADISON, a/k/a "Will,"** and his co-conspirators sought to accomplish the purpose of the conspiracy included, among other things, the following:

4.      **ALVIN ATKIN MADISON, a/k/a "Will,"** and Christine Pawlak would solicit family members and others without criminal histories, including Individual #1 and Individual #2, to serve as "straw owners," that is, to pose as the 100% owners and managers of DMEPOS companies, in exchange for payments.

5.      **ALVIN ATKIN MADISON, a/k/a "Will,"** and Christine Pawlak would open bank accounts, lease properties, and obtain liability insurance in the names of the "straw owners" in order to satisfy Medicare's application requirements for DMEPOS companies.

6.      Christine Pawlak would prepare and submit form CMS-855S Medicare Enrollment Applications, with the supporting documentation, for these DMEPOS companies, in order to obtain Medicare Provider Numbers.  The applications would only contain the names of the "straw

owners" and would conceal the ownership and managements interest of **ALVIN ATKIN MADISON, a/k/a "Will,"** and Christine Pawlak because they were ineligible to participate as Medicare providers.

7.      After obtaining Medicare Provider Numbers that allowed the companies to bill Medicare, **ALVIN ATKIN MADISON, a/k/a "Will,"** and Christine Pawlak would: (a) submit claims to Medicare for reimbursement and share in the proceeds; and (b) sell the DMEPOS companies at a premium to third parties who, in turn, submitted claims to Medicare for reimbursement.

## Overt Acts

In furtherance of the conspiracy, and to accomplish its objects and purpose, at least one of the conspirators committed and caused to be committed in the Southern District of Florida at least one of the following overt acts, among others:

8.      On or about April 24, 2020, **ALVIN ATKIN MADISON, a/k/a "Will,"** and Christine Pawlak submitted a form CMS-855S Medicare Enrollment Application for Durable, concealing the fact that **MADISON** and Pawlak had an ownership, financial, and control interest in Durable, by placing Durable in the sole name of Individual #2, a relative of **MADISON.**

9.      On or about October 11, 2018, **ALVIN ATKIN MADISON, a/k/a "Will,"** and Christine Pawlak submitted a form CMS-855S Medicare Enrollment Application for Family Medical, concealing the fact that **MADISON** and Pawlak had an ownership, financial, and control interest in Family Medical, by placing Family Medical in the sole name of Individual #2, a relative of **MADISON.**

10.     On or about April 28, 2020, **ALVIN ATKIN MADISON, a/k/a "Will,"** and Christine Pawlak submitted a form CMS-855S Medicare Enrollment Application for Infinity,

11

concealing the fact that **MADISON** and Pawlak had an ownership, financial, and control interest in Infinity, by placing Infinity in the sole name of Individual #2, a relative of **MADISON.**

11.     On or about September 20, 2018, **ALVIN ATKIN MADISON, a/k/a "Will,"** and Christine Pawlak submitted a form CMS-855S Medicare Enrollment Application for Iridium, concealing the fact that **MADISON** had an  ownership, financial, and control interest in Iridium, by placing Iridium in the sole name of Co-Conspirator #1.

12.     On or about April 22, 2019, **ALVIN ATKIN MADISON, a/k/a "Will,"** and Christine Pawlak submitted a form CMS-855S Medicare Enrollment Application for Trinity, concealing the fact that **MADISON** and Pawlak had an ownership, financial, and control interest in Trinity, by placing Trinity in the sole name of Individual #1, a relative of Pawlak.

## FORFEITURE
### (18 U.S.C. § 982)

1.     The allegations of this Information are hereby re-alleged and by this reference fully incorporated herein for the purpose of alleging forfeiture to the United States of America of certain property in which the defendant, **ALVIN ATKIN MADISON, a/k/a "Will,"** has an interest.

2.     Upon conviction of the violation of Title 18, United States Code, Section 1349, as alleged in Count 1 of this Information, the defendant shall forfeit to the United States any property, real or personal, which constitutes or is derived, directly or indirectly, from gross proceeds traceable to the commission of the offense, pursuant to Title 18, United States Code, Section 982(a)(7).

3.     The property subject to forfeiture as a result of the alleged offense includes, but is not limited to, the following: the sum of at least $737,568.97 in United States currency, which amount is equal to the gross proceeds traceable to the commission of the offense alleged in this

Information, which the United States will seek as a forfeiture money judgment.  If any of the property described above, as a result of any act or omission of a defendant:

    a.    cannot be located upon the exercise of due diligence;

    b.    has been transferred, sold to, or deposited with, a third party;

    c.    has been placed beyond the jurisdiction of the court;

    d.    has been substantially diminished in value; or

    e.    has been commingled with other property which cannot be divided without difficulty,

the United States shall be entitled to forfeiture of substitute property pursuant to Title 21, United States Code, Section 853(p).

All pursuant to Title 18, United States Code, Section 982(a)(7), and the procedures set forth in Title 21, United States Code, Section 853, as incorporated by Title 18, United States Code, Section 982(b)(1).


_____ for

JUAN ANTONIO GONZALEZ
ACTING UNITED STATES ATTORNEY


_____

A. MARIE VILLAFAÑA
ASSISTANT UNITED STATES ATTORNEY

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 21-80109-CR-ROSENBERG/REINHART

UNITED STATES OF AMERICA

v.

ALVIN ATKIN MADISON,
a/k/a "Will,"

_____ Defendant. _____/

**CERTIFICATE OF TRIAL ATTORNEY\***

**Superseding Case Information:**

**Court Division:** (Select One)

☐ Miami  ☐ Key West  ☐ FTL
☑ WPB  ☐ FTP

New defendant(s)  ☐ Yes  ☐ No
Number of new defendants _____
Total number of counts _____

1. I have carefully considered the allegations of the indictment, the number of defendants, the number of probable witnesses and the legal complexities of the Indictment/Information attached hereto.

2. I am aware that the information supplied on this statement will be relied upon by the Judges of this Court in setting their calendars and scheduling criminal trials under the mandate of the Speedy Trial Act,

   Title 28 U.S.C. Section 3161.

3. Interpreter: (Yes or No) **No** _____

   List language and/or dialect _____

4. This case will take __3__ days for the parties to try.

5. Please check appropriate category and type of offense listed below:

   (Check only one)
   I    0 to 5 days        ☑
   II   6 to 10 days       ☐
   III  11 to 20 days      ☐
   IV   21 to 60 days      ☐
   V    61 days and over   ☐

   (Check only one)
   Petty         ☐
   Minor         ☐
   Misdemeanor   ☐
   Felony        ☑

6. Has this case previously been filed in this District Court? (Yes or No) **No** _____

   If yes: Judge _____ Case No. _____
   (Attach copy of dispositive order)

   Has a complaint been filed in this matter? (Yes or No) **No** _____

   If yes: Magistrate Case No. _____

   Related miscellaneous numbers: _____

   Defendant(s) in federal custody as of _____

   Defendant(s) in state custody as of _____

   Rule 20 from the District of _____

   Is this a potential death penalty case? (Yes or No) **No** _____

7. Does this case originate from a matter pending in the Central Region of the U.S. Attorney's Office prior to August 9, 2013 (Mag. Judge Alicia O. Valle)? (Yes or No) **No** _____

8. Does this case originate from a matter pending in the Northern Region of the U.S. Attorney's Office prior to August 8, 2014 (Mag. Judge Shaniek Maynard? (Yes or No) **No** _____

9. Does this case originate from a matter pending in the Central Region of the U.S. Attorney's Office prior to October 3, 2019 (Mag. Judge Jared Strauss)? (Yes or No) **No** _____

A. MARIE VILLAFAÑA
Assistant United States Attorney
FLA Bar No.      0018255

\*Penalty Sheet(s) attached

REV 3/19/21

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

### PENALTY SHEET

CASE NO. 21-80109-CR-ROSENBERG/REINHART

Defendant's Name: ALVIN ATKIN MADISON, a/k/a "Will"

| COUNT | VIOLATION | U.S. CODE | MAX. PENALTY |
|-------|-----------|-----------|--------------|
| 1 | Conspiracy to Commit Health Care Fraud | 18 U.S.C. § 1349 | 10 years' imprisonment<br>SR: 3 years<br>Fine: $250,000 or twice loss or gain<br>$100 special assessment |
| 2 | Conspiracy to Make False Statements in Connection with Health Care | 18 U.S.C. § 371 | 5 years' imprisonment<br>SR: 3 years<br>Fine: $250,000<br>$100 special assessment |

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

CASE NUMBER: 21-80109-CR-ROSENBERG/REINHART

### BOND RECOMMENDATION

DEFENDANT: ALVIN ATKIN MADISON, a/k/a "Will"

$50,000 Personal Surety Bond

(Personal Surety) (Corporate Surety) (Cash) (Pre-Trial Detention)

By: _____

AUSA:   A. MARIE VILLAFAÑA

Last Known Address: _____

_____

_____

What Facility: _____

_____

Agent(s):      Special Agent Radu Pisano

(FBI)   (SECRET SERVICE)   (DEA)   (IRS)   (ICE) (OTHER)

HHS-OIG

AO 455 (Rev. 01/09) Waiver of an Indictment

# UNITED STATES DISTRICT COURT
for the
Southern District of Florida

| | |
|---|---|
| United States of America | ) |
| v. | ) |
| ALVIN ATKIN MADISON, | ) |
| a/k/a "Will," | ) |
| *Defendant* | ) |

Case No. 21-80109-CR-ROSENBERG/
REINHART

## WAIVER OF AN INDICTMENT

I understand that I have been accused of one or more offenses punishable by imprisonment for more than one year. I was advised in open court of my rights and the nature of the proposed charges against me.

After receiving this advice, I waive my right to prosecution by indictment and consent to prosecution by information.

Date: _____

_____
*Defendant's signature*

_____
*Signature of defendant's attorney*

Bruce H. Lehr
*Printed name of defendant's attorney*

_____
*Judge's signature*

United States Magistrate Judge
*Judge's printed name and title*